**Glenn THIRKIELD, # 249911, Petitioner,**

v.

**Terry PITCHER, Respondent.**

**Civil No. 01–CV–70334–DT.**

United States District Court, E.D. Michigan, Southern Division.

March 27, 2002.

Glen Thirkield, Muskegon, MI, pro se.

John G. McBain, Jr., Jackson, MI, Jerrold E. Schrotenboer, Jackson County Prosecutor's Office, Jackson, MI, for Terry Pitcher.

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

FRIEDMAN, District Judge.

#### I. Introduction

Glenn Thirkield, ("petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges the legality of his 1996 Jackson County convictions and sentences. For the reasons set forth below, the Court shall deny the petition and dismiss the matter with prejudice.

#### II. Factual and Procedural Background

On April 26, 1996, petitioner pleaded guilty in four separate cases. In case 95–75699–FC, petitioner pleaded guilty to armed robbery, M.C.L. § 750.529, and felony firearm, M.C.L. § 750.227b. In case 96–75700–FC, petitioner pleaded guilty to larceny from a person, M.C.L. § 750.357, carrying a concealed weapon, M.C.L.

§ 750.227, and being a second felony offender, M.C.L. § 769.10. In case 96–75702–FH, petitioner pleaded guilty to unarmed robbery, M.C.L. § 750.530, and being a second felony offender. Finally, in case 96–75703–FC, petitioner pleaded guilty to armed robbery, felony firearm, and being a second felony offender.[1]

Petitioner alleges that he has a third grade education and that he is illiterate. However, the record indicates that he completed at least the eighth grade and attended the ninth grade before being incarcerated and that he continued to attend school while in prison. Pre–Sentence Investigation Report ("PSIR") at 4. The record also indicates that petitioner scored 102 on an I.Q. test in 1980, indicating that he is of average intelligence. *Id.* Petitioner alleges that he was taking the psychotropic drugs Thorazine and Elavil and that this adversely affected his judgment in the plea taking process. However, no record was made in state court concerning this matter. Petitioner's answers to the trial court's questioning at his guilty plea proceedings were responsive and appropriate and not indicative of a confused or drugged state of mind. Further, the PSIR includes the following information concerning petitioner's mental health: "Mr. Thirkield stated that he has never been involved in mental health counseling and has no need for it [because] 'I don't feel I'm crazy.'" PSIR at 6.

Petitioner was sentenced in all four cases on May 30, 1996, in the Jackson County Circuit Court. All of petitioner's sentences in each separate case are consecutive to his parole violator term and concurrent to the sentences in each other case.

Petitioner was sentenced in case 96–75699–FC to consecutive terms of two years and twenty to forty years imprisonment for felony firearm and armed robbery. Petitioner was sentenced in case 96–75700–FC to concurrent terms of ten to fifteen years and two to five years imprisonment for larceny from a person and carrying a concealed weapon. In case 96–75702–FH petitioner was sentenced to fourteen to twenty-two and a half years imprisonment for unarmed robbery and being a second felony offender. In case 96–75703–FC petitioner was sentenced to consecutive terms of twenty to forty years imprisonment and two years imprisonment for armed robbery, felony firearm, and being a second felony offender. Thus, petitioner's effective new sentences were a twenty to forty year sentence for armed robbery and a consecutive two year mandatory term for felony firearm. All of petitioner's shorter new sentences are concurrent to his twenty to forty year sentence.

Petitioner subsequently filed a motion to withdraw his guilty pleas, or in the alternative, for resentencing. An evidentiary hearing on the motion was held on October 3, 1997. Petitioner testified that, before he pleaded guilty, trial counsel had told him he would be sentenced to ten to twenty-two years for his crimes. Petitioner testified that he only pleaded guilty because he believed that he would receive a

---

**1.** In case 96–75702–FC, petitioner robbed a Family Dollar store, taking $1,996.85. In the course of this unarmed robbery he assaulted a fifty year old woman who incurred about $ 14,000.00 in medical expenses. In case 96–75699–FC, petitioner robbed a woman who was making a bank deposit. In this armed robbery, petitioner pointed a gun at the victim and took $ 58.55. In case 96–75703–FC, petitioner robbed another woman as she was making a bank deposit. In this armed robbery, petitioner pointed his gun at the victim's face, taking $2,531.17. In case 96–75700–FH, petitioner stole $ 1095.00 from a sixty-eight year old woman as she was about to make a bank deposit. When petitioner was apprehended, he had a 9 mm gun in his pocket.

ten to twenty-two year sentence. Evidentiary Hearing of October 3, 1997 ("EH") at 13–15. Petitioner testified that his trial attorney Jerry M. Engle gave him a piece of paper before he pleaded guilty which he (petitioner) believed set forth the sentences he would receive upon pleading guilty. EH at 14–15.

Petitioner has attached a copy of this paper as Appendix A of his habeas petition. See, Brief in Support [of] Writ of Habeas Corpus at 1; Petitioner's Appendix A. Written across the top of the paper is the single word "Guidelines." At the bottom of the paper the following writing appears in table form:

| Consecutive felony firearm | | 2–2 |
| | AR's | 8–20 |
| | Unarmed's | 2–15 |
| Concurrent | | 2–15 |
| | | 10–22 |

Petitioner's Appendix A.

A semi-circle opening to the right is drawn which half-encircles the above writing from "AR's" to "10–22." The word "concurrent" is written outside of the middle of this semi-circle or elongated rightward opening parentheses mark. *Id.*

Petitioner admitted that he never heard the trial judge tell him that there was a plea bargain at any of his four guilty plea proceedings. Petitioner admitted that the trial judge never indicated that there was a sentence agreement of ten to twenty-two years, or any sentence agreement at all. EH at 15–16. Petitioner also admitted that the trial judge asked him at each of his plea proceedings if he was pleading guilty voluntarily and that he replied that he was. Petitioner testified that the trial judge asked him at each of his plea proceedings if anyone had forced him to plead guilty and he had not said so. EH at 16. Petitioner testified that he did not say

anything about what he believed was his plea agreement during his guilty plea proceedings, because his attorney had told him to agree with whatever the judge said. *Id.*

Petitioner testified that he tried to withdraw his guilty plea before he was sentenced after receiving a paper from Mr. Engle indicating that he would be sentenced to twenty to forty years for armed robbery and a consecutive two year sentence for felony firearm. EH at 22–24. Petitioner also testified that he first got the paper stating what his sentence would be in the courtroom after he was sentenced. EH at 25. Petitioner further testified that he believed he would be sentenced to ten to twenty-two years up to the time he was sentenced and that there was no time before he was sentenced that he knew he was going to get twenty-two to forty-two years. EH at 25–26. Petitioner testified that he would not have pleaded guilty if he had known that there was no sentence agreement. EH at 28.

On cross-examination, petitioner repeated his testimony that attorney Engle had told him he would be sentenced to ten to twenty-two years as part of his plea bargain. EH at 32. Petitioner again admitted that, when asked by the trial judge at each of his plea proceedings if he was aware of any sentencing agreement or plea bargain, he had testified that he was not. EH at 33.

The following colloquy then took place between the trial judge and petitioner[2]:

THE COURT: When you said there was no sentence or plea agreement to me when I took you plea, were you telling the truth?

THE WITNESS: No.

---

**2.** Mr. Schrotenboer represented the prosecution at the hearing. Ms. Pillette represented petitioner.

THE COURT: Then I asked you has anybody promised you anything at all to get you to plead guilty to these two counts on this file, and you answered no, didn't you?

THE WITNESS: Yes.

THE COURT: Were you telling the truth?

THE WITNESS: No.

THE COURT: Then I asked you did Mr. Engle promise you anything or anyone else about any sentence in this matter? Answer: And you said no. Was that the truth?

THE WITNESS: At the time, no.

THE COURT: Why didn't you tell me the truth? You think I'm just asking these questions to get the wrong answers?

THE WITNESS: The lawyer told me not to mention what me and him talked about.

THE COURT: All right. Anything further, Mr. Schrotenboer?

MR. SCHROTENBOER: Oh yes, Your Honor.

BY MR. SHROTENBOER, CONTINUING: So in other words, you perjured yourself?

MS. PILLETTE: Your Honor, I object. That calls for a legal conclusion.

THE COURT: I can make that conclusion already. Sustained. Next question.

EH at 33–34.

Shortly thereafter, a conference was held between the trial judge, the prosecutor, and defense counsel. After this conference, petitioner and defense counsel conferred. EH at 35–36 Pursuant to an agreement negotiated at that time, petitioner agreed to withdraw his challenge to his guilty plea and ask the trial court to deny his motion in exchange for a promise that the prosecutor would not pursue perjury charges against him. EH at 36–37. The trial judge then denied petitioner's motion to withdraw his guilty plea. EH at 37.

Petitioner then filed a delayed application for leave to appeal to the Michigan Court of Appeals through counsel contending that his sentence was disproportionate to his crimes and circumstances. Petitioner tried to file a *pro per* supplemental brief raising his claim challenging the voluntariness of his guilty pleas. The Michigan Court of Appeals returned petitioner's *pro per* supplement because it was received too late. Petitioner tried to file a motion for rehearing raising his plea withdrawal claim. This motion was also returned as not timely filed. The Michigan Court of Appeals denied petitioner leave to appeal for lack of merit in the grounds presented. *People v. Thirkield,* Michigan Court of Appeals Docket No. 207310 (June 18, 1998).

Petitioner then sought leave to appeal in the Michigan Supreme Court, raising both his challenges to his sentence and his guilty pleas. The Michigan Supreme Court denied petitioner leave to appeal because it was not persuaded that it should review the questions presented. *People v. Thirkield,* 459 Mich. 966, 591 N.W.2d 37 (1999).

Petitioner next filed a petition for a writ of habeas corpus in this Court. This Court dismissed the petition for failure to exhaust state court remedies. *Thirkield v. Caruso,* Docket No. 99–CV–72333–DT (E.D.Mich. September 28, 1999).

On June 30, 1999, petitioner filed a motion for relief from judgement in the trial court. The trial court denied the motion. Petitioner did not seek leave to appeal the trial court's denial of his motion. Rather, on November 29, 1999, petitioner filed a second motion for relief from judgment. On February 26, 2000, the trial court dismissed the motion as violating M.C.R. 6.502(G)(1) which allows only one motion for relief from judgment, except for cer-

tain circumstances which did not apply to petitioner's motion.

Petitioner then filed an application for leave to appeal to the Michigan Court of Appeals. Citing M.C.R. 6.502(G)(1), the Michigan Court of Appeals dismissed petitioner's application "because a defendant cannot appeal a circuit court order denying a successive motion for relief from judgment." *People v. Thirkield,* Michigan Court of Appeals Docket No. 225804 (July 19, 2000). Petitioner next sought leave to appeal to the Michigan Supreme Court which was denied. *People v. Thirkield,* 463 Mich. 946, 620 N.W.2d 857 (2000).

The present petition was filed on or about January 26, 2001. Respondent filed a motion to dismiss for failure to comply with the habeas corpus statute of limitations which this Court denied in an order dated November 1, 2001. *Thirkield v. Pitcher,* Docket No. 01–CV–70334–DT (E.D.Mich. November 1, 2001).

Pending before this Court is petitioner's habeas application raising the following claims:

I. Petitioner was denied due process of law and the right to a fair hearing when the trial court resorted to intimidation and coercion to scare petitioner into withdrawing his challenge to his guilty pleas that had been induced by a false promise of a ten year minimum sentence. In addition, petitioner was denied the effective assistance of counsel due to counsel's failure to request a psychiatric examination of petitioner where petitioner was on numerous psychotropic medications and was placed on suicide watch because of his mental stability.

II. Petitioner was denied effective assistance of appellate counsel where appellate counsel abandoned petitioner's challenge to the voluntariness of his guilty pleas, demonstrating good cause for his failure to present this claim to the Michigan appellate courts and prejudice therefrom.

Respondent has answered the petition. Respondent contends that petitioner has procedurally defaulted his challenge to his guilty pleas, failed to establish good cause for his procedural defaults, and that his challenge to his guilty plea lacks merit.

### III. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998); *Harris v. Stovall*, 212 F.3d 940 (6th Cir.2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[3]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry

should ask whether the state court's application of clearly established federal law was objectively unreasonable ...

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at at 409–11, 120 S.Ct. 1495 (emphasis in original).

With this standard in mind, the Court proceeds to address the petition for a writ of habeas corpus.

### IV. *Discussion*
#### A.

Petitioner claims that his guilty pleas are involuntary because they were induced by a false promise from his trial lawyer that he would receive a ten to twenty-two year sentence for his crimes. Petitioner also contends that trial counsel was ineffective for failing to seek a psychiatric competence exam for him. Petitioner contends that ineffective assistance of appellate counsel excuses any procedural default he made by failing to present his challenge to his guilty pleas in his direct appeal.

Respondent contends that petitioner's claim challenging his guilty pleas is procedurally defaulted because it was not presented in his direct appeal and the trial court invoked this procedural bar in its order denying petitioner's motion for relief from judgment.[4] As noted above, petition-

---

**3.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

made by a State court shall be presumed to be correct.

**4.** Petitioner committed other procedural defaults, such as failing to seek leave to appeal the trial court's denial of his first motion for

er first challenged the voluntariness of his guilty pleas in his motion for a new trial as part of his direct appeal. An evidentiary hearing was held. Petitioner testified as to his understanding of the sentence he expected to receive upon pleading guilty. Further testimony at the hearing established that, at his guilty plea proceedings, petitioner had denied that his pleas were induced by threats, promises of leniency, plea bargains, or sentence agreements. Petitioner testified that he had lied at his guilty plea proceedings. Petitioner agreed to withdraw his challenge to his guilty pleas in exchange for the prosecution's promise not to prosecute him for perjury. Subsequently, petitioner challenged only his sentencing as disproportionate in his application for leave to appeal to the Michigan Court of Appeals submitted by appellate counsel. Petitioner sought to raise his challenge to his guilty pleas in a *pro per* supplemental brief, but failed to do so in a timely fashion.

■■■ In his subsequent motion for relief from judgment, petitioner again raised his challenge to the voluntariness of his guilty pleas. In an order dated July 9, 1999, the trial court denied the motion, finding that petitioner defaulted this claim pursuant to M.C.R. 6.508(D)(3) and that he failed to demonstrate good cause for his failure to raise such grounds on appeal or in a prior motion in this matter.[5] The trial court's denial of petitioner's motion for relief from judgment expressly invoked a procedural bar. The trial court did so by stating that petitioner failed to show entitlement to relief because he failed to show good cause for not presenting his claims in his prior appeals. This statement by the trial court was sufficient to invoke a procedural bar. *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir.2000).

■■■ Thus, petitioner's claim that his guilty pleas were induced by a false promise that he would be sentenced to ten to twenty-two years is procedurally defaulted.[6] Petitioner's claim that trial counsel

---

relief from judgment and by failing to seek leave to appeal in the Michigan Supreme Court in all four of his guilty plea cases. Further discussion of these defaults is not necessary, however.

5. M.C.R. 6.508(D)(3) reads in relevant part as follows:
> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
> ....
> (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo con-

tendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;
> (iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;
> (iv) in the case of a challenge to the sentence, the sentence is invalid.
> The court may waive the "good cause" requirement of subrule (D)(3)(A) if it concludes that there is a significant possibility that the defendant is innocent of the crime. M.C.R. 6.508(D)(3) (effective October 1, 1989).

6. The substantive changes in 28 U.S.C. § 2254(d) made by the AEDPA did not change the procedural default rules. *Moleterno v. Nelson*, 114 F.3d 629, 633–34 (7th Cir.1997); *see Breard v. Netherland*, 949 F.Supp. 1255, 1262–63 (E.D.Va.1996) (concluding that the AEDPA's stronger finality rules on habeas review of capital cases "in no way suggests Congress' intent to eviscerate the procedural

was ineffective for failing to seek a psychiatric competence examination is also procedurally defaulted. A state prisoner's habeas corpus claims are procedurally defaulted if the prisoner has failed to comply with an independent and adequate state procedural rule, thus causing default of the prisoner's federal claims in state court. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. This can occur when an individual fails to present an issue to a state appellate court upon the only opportunity to do so. *Teague v. Lane,* 489 U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994). The record demonstrates that petitioner did not raise the claim that trial counsel was ineffective for failing to seek a psychiatric examination of him prior to the plea proceedings on direct appeal to the Michigan Court of Appeals or in his subsequent motion under M.C.R. 6.500, et. seq. Petitioner is now barred from seeking such review under Michigan Court Rule 6.508(D)(3), which precludes relief for claims which could have been presented in a prior appeal or motion, but were not, absent a showing of cause and prejudice.[7]

▆▆ When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson,* 501 U.S. 722, 750–751, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If petitioner does not show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Bell v. Smith,* 114 F.Supp.2d 633, 638

(E.D.Mich.2000) (Gadola, J). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier,* 477 U.S. 478, 479–480, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence of actual innocence that was not presented at trial. *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *See also Hilliard v. United States,* 157 F.3d 444, 450 (6th Cir.1998).

Petitioner claims to show good cause for his procedural defaults and prejudice therefrom, contending that ineffective assistance of trial and appellate counsel caused his procedural defaults. In the instant case, Petitioner claims that his attorney's ineffectiveness constitutes "cause." The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error.... Attorney error that constitutes ineffective assistance of

---

default rules applicable in all other habeas petitions.").

**7.** As noted, there is also no evidence in the record to support this claim.

counsel is cause, however." *Id.* at 753–54, 111 S.Ct. 2546 (internal citations omitted).

■ A claim of ineffective assistance of counsel asserted as cause to excuse a procedural default is itself an independent constitutional claim which requires exhaustion in state court. *Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). A petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c).

■ A petitioner " 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1516 (6th Cir.1993), *cert. denied,* 509 U.S. 907, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993). A prisoner filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 must first exhaust all state remedies. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994). State prisoners "must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728; *see also Rust,* 17 F.3d at 160 (exhaustion requirement is satisfied when the state's highest court has been given a full and fair opportunity to rule on the petitioner's claims). A petitioner must present each ground to both appellate courts, even if the state's highest court only provides discretionary appellate

review. *O'Sullivan,* 526 U.S. at 845–47, 119 S.Ct. 1728.

■ Petitioner has not presented his claims of ineffective assistance of appellate or trial counsel to the state courts. Accordingly, these claims are unexhausted. However, a federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also Lyons v. Stovall,* 188 F.3d 327, 333 (6th Cir.1999) (holding that where a federal constitutional claim was plainly meritless, federal court could properly address the merits of the petition); *Cain v. Redman,* 947 F.2d 817, 820 (6th Cir.1991) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court), *cert. denied,* 503 U.S. 922, 112 S.Ct. 1299, 117 L.Ed.2d 521 (1992). For the reasons set forth below, the Court concludes that petitioner's ineffective assistance of counsel claims are meritless and do provide good cause for his procedural default. Accordingly, in the interests of efficiency and justice, the Court will address petitioner's claims rather than dismissing the petition on the ground of failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Cain,* 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of judicial time and resources to require exhaustion").[8]

**B.**

■ Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639; *Mapes v. Coyle,* 171 F.3d 408 (6th Cir.1999); *Richardson v. Elo,* 974 F.Supp. 1100, 1104 (E.D.Mich.1997) (Gado-

---

**8.** Respondent has not asserted that petitioner's ineffective assistance of appellate counsel claim is unexhausted or procedurally defaulted. Rather, respondent maintains that petitioner's ineffective assistance claims lack merit.

la, J.). Not just any deficiency in counsel's performance will excuse a procedural default, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Attorney error that falls short of constitutional ineffective assistance of counsel does not constitute cause to excuse a procedural default. *Bruton v. Phillips,* 64 F.Supp.2d 669, 682–683 (E.D.Mich.1999) (Gadola, J.). If petitioner's ineffective assistance of appellate counsel claim lacks merit, it cannot constitute cause to excuse his default. *Sherrill v. Hargett,* 184 F.3d 1172, 1176 (10th Cir. 1999).

■ The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey,* 469 U.S. 387, 396–397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant or suggested by the record. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

■ An attorney's failure to present a meritless issue on appeal does not constitute ineffective assistance of counsel. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes,* 171 F.3d at 413. Thus, to determine whether petitioner received ineffective assistance of appellate counsel, this Court must first examine the merits of the claims which appellate counsel might have presented in petitioner's direct appeal, but failed to do so. "[T]he questions then become whether appellate counsel was constitutionally ineffective for failing to raise those errors on appeal and, if so, whether the petitioner was prejudiced by counsel's unsatisfactory representation." *Mapes,* 171 F.3d at 413–14.

■ Petitioner claims that he received ineffective assistance of appellate counsel, because appellate counsel failed to present his challenge to the voluntariness of his plea to the Michigan Court of Appeals. Petitioner fails to show that counsel was ineffective for several reasons. First, counsel only abandoned petitioner's challenge to the voluntariness of his plea after petitioner agreed to do so upon a showing that his hearing testimony inexorably lead to a conclusion that he had perjured himself either at the hearing or at his guilty plea proceedings. Petitioner's actions at the evidentiary hearing constituted an acquiescence to appellate counsel's withdrawal of the challenge to the voluntariness of petitioner's guilty pleas, waiving further review. *United States v. Carmichael,* 232 F.3d 510, 518–19 (6th Cir.2000), *cert. denied,* 532 U.S. 974, 121 S.Ct. 1607, 149 L.Ed.2d 472 (2001). Petitioner is bound by his agreement set forth in open court. *Bailey v. Mitchell,* 271 F.3d 652, 657 (6th Cir.2001).

■ Second, a challenge to petitioner's guilty pleas would not have prevailed in state court. A plea of guilty must be knowingly and voluntarily made. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Inst.,* 927 F.2d 256, 257 (6th Cir.1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton,* 17 F.3d 151, 154 (6th Cir.1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th

Cir.1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

 It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson,* 467 U.S. 504, 508–09, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). A guilty plea "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes)." *Id.* at 509, 104 S.Ct. at 2547 (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)). Federal and state courts will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Cunningham v. Diesslin,* 92 F.3d 1054, 1060 (10th Cir.1996).

A review of the record shows that petitioner's guilty plea was voluntary and intelligent and made after being fully informed of his constitutional rights. Petitioner was also informed of the maximum sentences he faced and the elements of the crimes to which he pled guilty. The court carefully questioned petitioner about whether he had been coerced or threatened to plead guilty and he stated that he had not been.

 The court carefully questioned petitioner about whether any promises had been made to him to induce his plea and whether any sentencing agreement or plea bargain had been made. Petitioner stated that no promises had been made and acknowledged that no plea bargain or sentencing agreement had been made. There is no evidence in the record that petitioner was unable to understand his guilty plea proceedings. Petitioner testified to the contrary at his evidentiary hearing. However, this hearing testimony was directly contradicted by his sworn responsive and coherent testimony at his guilty plea proceedings. A defendant's unsupported allegations that his plea was induced by promises of leniency are not sufficient to require reversal of a judgment of conviction following refusal of the trial court to allow the defendant to withdraw his guilty plea. *People v. Fenn,* 23 Mich.App. 560, 179 N.W.2d 247 (1970). With regard to petitioner's testimony that promises of leniency had been made, the record of petitioner's guilty pleas does not support such conclusions. "Courts generally will reject assertions that promises of leniency were made where, as here, the defendant has [previously] sworn on the record that no such promises were made." *People v. Haynes,* 221 Mich.App. 551, 562, 562 N.W.2d 241 (1997) (citing *People v. Jackson,* 203 Mich.App. 607, 612, 513 N.W.2d 206 (1994)). Further, there is no record support for petitioner's post-sentencing allegation that such a promise was made. *See id.,* pp. 612–613, 562 N.W.2d 241.

 Nor is there record support for his claim that prescribed psychotropic drugs rendered him unable to understand the proceedings. Psychotropic drugs are intended to restore competence, and while they are not always successful in doing so, use of psychotropic medication is evidence only of mental illness, not that the illness rendered the person incompetent. Peti-

tioner has provided no evidence that he was taking psychotropic drugs at the time of his guilty plea proceedings. Even if he had, the record does not support a claim that he was incompetent.

 The test for competency to stand trial is whether the defendant had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he [had] a rational as well as factual understanding of the proceedings against him." *Boag v. Raines,* 769 F.2d 1341, 1343 (9th Cir.1985) (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (*per curiam*)). To obtain relief on a substantive incompetence claim, petitioner must present evidence "sufficient to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to [his] mental capacity." *Watts v. Singletary,* 87 F.3d 1282, 1290 (11th Cir.1996) (quoting *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973)). "In a habeas proceeding, a petitioner is entitled to an evidentiary hearing on the issue of competency to stand trial if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court." *Boag,* 769 F.2d at 1343 (citation omitted). Although retrospective determinations of competency are not prohibited, they are disfavored, and the Court will give considerable weight to the lack of contemporaneous evidence of petitioner's incompetence. *See Odle v. Calderon,* 919 F.Supp. 1367, 1378 (N.D.Cal.1996).

 Petitioner has presented no evidence to support his substantive incompetence claim. All that petitioner has presented are unsupported allegations that are contradicted by the record of his guilty plea proceedings and the PSIR. Again, this claim was never presented to the Michigan courts. While it is conceivable that petitioner's failure to raise these claims in a timely post-conviction petition could also be excused by his alleged mental disability, he would have to claim a disability extending back many years, which has not been alleged here. Further, nothing short of a conclusive showing of mental incompetence would suffice. *Nachtigall v. Class,* 48 F.3d 1076, 1081 (8th Cir.1995); *cf. Cawley v. De Tella,* 71 F.3d 691, 696 (7th Cir.1995) (claim that petitioner had been "listless and depressed" was not cause excusing default). Petitioner's proposed grounds for habeas relief are too insubstantial to justify the appointment of counsel to explore the similarly remote possibility that he might be able to bring them. A person bringing a petition for habeas corpus stands in a different position from a defendant charged with a crime. A defendant facing trial is presumed innocent. He is entitled to counsel, and, when necessary, the services of medical and other experts at state expense. A habeas petitioner has been found guilty beyond a reasonable doubt (here by guilty plea) and his conviction has already been reviewed by the state courts. Habeas corpus is an extraordinary remedy for unusual cases, and the law accordingly requires appointment of counsel only "if, given the difficulty of the case and the litigant's ability, [he] could not obtain justice without an attorney, [he] could not obtain a lawyer on [his] own, and [he] would have had a reasonable chance of winning with a lawyer at [his] side." *Forbes v. Edgar,* 112 F.3d 262, 264 (7th Cir.1997). For the foregoing reasons the motion for appointment of counsel is denied, the motion to expand the record is denied, and the motion for an evidentiary hearing in this Court is denied.[9]

---

9. As noted, petitioner had an evidentiary hearing in state court pertaining to his motion to withdraw his guilty plea and, alternatively, to be resentenced, at which he was represented by counsel.

 The paper petitioner testified about at his hearing and has submitted to this Court as his Appendix A does not support petitioner's claim. The only word appearing at the top of the paper is "Guidelines." Nothing written on the paper indicates that it promises a maximum sentence of from ten to twenty-two years. "The Sentencing Guidelines explicitly state that they do not apply to habitual offender convictions. Moreover, the guidelines provide a recommended minimum range, whereas the habitual offender statute provides for enhancement of the maximum range." *People v. Peterson*, 149 Mich.App. 158, 160, 385 N.W.2d 635 (1985) (*per curiam*).[10]

In *Guilty Plea Cases*, 395 Mich. 96, 127 235 N.W.2d 132 (1975), the Michigan Supreme Court speaks not only of "promises" but of plea agreements: "If the judge determines that the plea agreement was not fulfilled" he shall either amend the judgment of conviction or permit the defendant to "withdraw his plea." However, in the present case, the trial judge carefully established before accepting petitioner's plea that no promises or plea agreements had been made.

Petitioner pled guilty, upon the advice of counsel, after being fully advised by the trial judge of his rights, the elements of the crime to which he was pleading guilty, and his maximum sentence exposure. The Court concludes that petitioner voluntarily and intelligently admitted his factual guilt. Consequently, it was not ineffective assistance of counsel to decline to pursue this futile and meritless claim. Therefore, a challenge to petitioner's guilty plea in the Michigan Court of Appeals would not have prevailed. Hence, petitioner has not shown that failing to present this claim in his application for leave to appeal was ineffective assistance. Because petitioner has failed to establish that his appellate attorney rendered ineffective assistance of counsel, he has failed to show cause for his procedural default. His claims are therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

 The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup*, 513 U.S. at 321, 115 S.Ct. 851. Thus, to obtain habeas review of his defaulted claim, petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.*

 Petitioner has not supported his allegations of constitutional error with new reliable evidence of innocence that was not presented to the trial court. Accordingly, petitioner's challenge to his guilty pleas is procedurally barred. Therefore, petitioner is not entitled to habeas review of his challenge to his guilty pleas or relief from his guilty pleas for these reasons.

 There is an additional, alternative reason why petitioner is not entitled to habeas relief from his guilty pleas and sentences. In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106

---

**10.** It is also curious that petitioner alleges that he relied upon this paper to form his belief that he would be sentenced to a total of from ten to twenty-two years, yet also claims that he can not read.

S.Ct. 366,. 88 L.Ed.2d 203 (1985). This determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58–60, 106 S.Ct. 366; *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. It is not enough for the petitioner merely to insist that, absent counsel's alleged errors, he would not have pleaded guilty. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, and that he would have received the same or greater sentence, he cannot show that the advice to plead guilty prejudiced him.

■ Petitioner has alleged that his guilty plea is involuntary because, but for counsel's alleged false promise that he would be sentenced to ten to twenty-two years, he would not have pleaded guilty. However, the record indicates that there is no reasonable probability that petitioner could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence. If anything, he might have received life.

The PSIR indicates that petitioner was apprehended by police on March 14, 1996, immediately after one of his robberies. The police were conducting surveillance of the area due to numerous armed and unarmed robberies that had taken place. Petitioner stole a blue bag containing $ 1,095.00 from sixty-eight year old Everett Lagow. The police gave chase and caught petitioner soon afterwards, in possession of the blue bag containing the money and with a pistol in his pocket. Upon questioning, petitioner admitted committing the three other robberies to which he also pleaded guilty in the proceeding challenged in this habeas petition. PSIR at 14–16, 7, 10, 12. The record establishes that petitioner was caught red-handed after one of his robberies and that he admitted committing three others to the police. These are the crimes to which he pleaded guilty. Thus, the record shows that there is no reasonable likelihood that petitioner could have prevailed at trial if he had pleaded not guilty. Further, the record shows that petitioner was a serial armed robber who only stopped committing armed robberies when caught in the act by the police. There is no reasonable probability that insisting on going to trial would have gotten him a lesser sentence. The maximum sentence for a first offense of armed robbery in Michigan is imprisonment for life or any term of years. M.C.L. § 750.529. If anything, going to trial would likely have brought petitioner a longer sentence by more fully informing the trial judge of the mental and physical trauma petitioner inflicted upon his victims.[11]

Petitioner cannot show that there is a reasonable chance he would have been acquitted or received a shorter sentence if he had pleaded not guilty. Thus, petitioner fails to show that he was prejudiced by trial and appellate counsel's alleged errors. This is an additional, alternative reason why petitioner fails to show cause for his

---

11. *See, Alabama v. Smith,* 490 U.S. 794, 795, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). In *Smith,* the Supreme Court held that no presumption of vindictiveness arises when a defendant receives a longer sentence following conviction after a trial following appellate reversal when the first, shorter sentence was based upon a guilty plea and the second, longer sentence follows a trial. The reason is that the longer sentence following a trial is likely based on the more complete, graphic, and disturbing information about the crime(s), the victim(s), and the perpetrator that a trial often reveals, compared to the limited, sparse, and relatively sterile information set forth in a guilty plea proceeding.

procedural defaults and is not entitled to habeas relief.

### V. *Order*

Based upon the foregoing, **IT IS OR-DERED** that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED WITH PREJUDICE**.